CITY OF ONEIDA v. KING.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

MUNICIPAL CORPORATIONS — BONDS — POWER TO ISSUE — PAYMENT OF ASSESS-
MENTS.

> The City Charter of Oneida, § 59, subd. 25, Laws 1904, p. 563, c. 273,
> providing that, whenever the common council shall resolve that an ex-
> traordinary expenditure ought for the benefit of the city to be made, it
> may provide for the issue of bonds, does not authorize an issue of bonds
> to pay part of a valid assessment previously made on property holders
> for the construction of a sewer.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Cor-
> porations, §§ 1897–1901.]

Action by the city of Oneida against Clarence N. King. Submission
of controversy on an agreed statement of facts, pursuant to Code Civ.
Proc. § 1279. Judgment for defendant.

The point of this controversy is the legality of an issue of bonds of the city
of Oneida amounting to $11,560.76. Said city was incorporated by chapter 225,
p. 531, of the Laws of 1901, as amended by chapter 273, p. 535, of the Laws
of 1904. Pursuant to the provisions of this charter, it completed in 1903 the
construction of a sewer. The expense thereof was partly assessed on the
city at large and partly on property owners deemed to be specially benefited
thereby. Such assessments were made according to the charter provisions.
The portion of the expense which was assessed on the city at large has been
paid or provided for by the city, and no question here exists concerning the
same. Certain of the property owners against whom special assessments had
been made on the ground that they were specially benefited made objections
to such assessments. But such assessments were confirmed by both the
board of public works and the common council of the city. Said property own-
ers then brought an action to have the assessments declared illegal and to
restrain the collection thereof. On the trial of the action, judgment was
granted dismissing the complaint and upholding the proceedings for the
construction of the sewer and for making said assessments. An appeal was
taken from such judgment to this court, and the judgment has been affirmed
without opinion. The validity of said assessments has thus been judicially
declared, and no question is or can here be made in respect thereto. There-
after, pursuant to the request of said property owners, the common council
of the city provided for a special election of taxpayers to vote on a proposi-
tion as to whether bonds of the city should be issued in the said sum of $11,-
560.76, the proceeds thereof to be used toward the payment of the assessments
for the cost of said sewer construction, said sum to be applied toward the
payment of such assessments in proportion to the amount assessed against
each person. At such election the proposition was carried. The common
council prepared the bonds and advertised them for sale. The defendant hav-
ing made the highest bid therefor, they were awarded to him. Thereafter he
refused to accept and pay for the bonds on the ground of their illegality.

Argued before PARKER, P. J., and SMITH, CHESTER, KEL-
LOGG, and COCHRANE, JJ.

J. F. Connor, for plaintiff.
E. L. Hunt, for defendant.

COCHRANE, J. It is not apparent just how the amount of this
bond issue was arrived at, nor is it material. The purpose thereof is
to relieve individual property owners of a portion of the assessments
which have been levied against their property for this public improve-
ment, and which assessments under the provisions of the city charter

are liens against their property and are concededly enforceable against the same, and the legality of which is unquestioned. The power of the city to issue these bonds must be derived from some legislative enactment. Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870, 7 L. R. A. 759. Such power is claimed to exist in subdivision 25 of section 59 of the city charter as amended (Laws 1904, p. 563, c. 273), which, so far as pertinent to this question, provides that:

"Whenever the common council shall resolve by the affirmative vote of a majority of all its members that an extraordinary expenditure ought for the benefit of the city to be made for any specific purpose set forth in the resolution it shall make an estimate of the sum necessary therefor."

And then it provides for the submission of the question to a vote of the taxpayers and for raising such sum by taxation or bonds, prescribing the procedure which has been followed in this case and which has resulted in the bonds in question.

Underlying all expenditures authorized by this statute, there is the basic principle that such expenditure must be "for the benefit of the city." I am at a loss to discover by what reasoning process it can be claimed that this proposed expenditure is to benefit the city. It is prejudicial to the city without an equivalent therefor. It benefits not the city, but individual taxpayers at the expense of the city. If it be urged that these special assessments are unjust to the property owners affected thereby, in that the latter are subjected to an unfair proportion of the cost of this city improvement, it may be said in answer that no system of taxation has yet been devised resulting in an absolutely fair distribution of the public burden. Equality of taxation is one of the unsolved problems which has engaged the attention of political economists since Adam Smith published his Canons of Taxation. It is one of the bright iridescent dreams of the future, scarcely to be hoped for, much less expected, as long as mental activities are circumscribed by human limitations. No equitable reason appears why these property owners should be relieved from this taxation which would not equally apply to a very large proportion of the inhabitants of the state who are burdened with taxation, and who, perchance, may bear a greater proportion of such burden than their more fortunate neighbors. But whether these taxes are inequitable and unduly burdensome is not the question. They have been lawfully assessed and are collectible. Hence the bonds in question would relieve these particular taxpayers from the payment of their taxes, but in no sense would they benefit the city.

It clearly is not the purpose of this act to relieve persons from lawfully imposed taxation. The act contemplates expenditures which in some way will prove beneficial to the city, and which will not merely prove beneficial to some of the taxpayers of the city at the expense of the latter. This proposed expenditure does not subserve any municipal purpose. The expenditure for the sewer was, in the language of the statute, "an extraordinary expenditure" and "for the benefit of the city." But that has been provided for and is an accomplished fact. This proposed expenditure is not for the purpose of constructing the sewer, but for the purpose of relieving certain taxpayers from their

legal burden of contributing to the expense of such sewer.   The cita-
tion of authorities in reference to statutes conferring power on munici-
palities to raise money is uninstructive.   Such were the cases of Terrill
v. Wheeler (Sup.) 2 N. Y. Supp. 86, affirmed 25 N. E. 329, Lamb v.
Connolly, 122 N. Y. 531, 25 N. E. 1042, Board of Supervisors of
County of Cayuga v. State of New York, 153 N. Y. 279, 47 N. E.
288, cited by defendant.   Here no such power is granted by the statute
in question for the proposed expenditure.   The common council was
not authorized thereby to submit to the taxpayers of the city any such
proposition as was voted on, and all proceedings in reference to such
proposition were void and the bonds are illegal.

Judgment ordered for the defendant, with costs.   All concur.