WILLIAM JAY SCHIEFFELIN, Plaintiff, *v.* JOHN F. HYLAN
et al., as Members of and Constituting the Board of
Estimate and Apportionment of the City of New
York, CHARLES L. CRAIG, as Comptroller of the City
of New York, ROBERT L. MORAN, as President of the
Board of Aldermen of the City of New York, EDWARD
ATWELL et al., as Members of the Board of Alder-
men of the City of New York, Defendants.

(Supreme Court, Kings Special Term for Motions, February, 1919.)

Municipal corporations — where a municipality has adopted and carried
out a policy it cannot be rescinded or changed — city of New York
— taxpayer's action — public service commission — when injunction
will be granted — Greater New York Charter, § 235 — the per-
sonnel of a city administration has no bearing upon the legality
of its acts.

When a municipality or one of its boards or departments
has lawfully adopted a policy or has resolved to proceed in a
certain way and that policy or action has been carried out, it
cannot be rescinded or changed though a different policy or
action might or'ginally have been equally valid.

From 1909 to 1912, section 10 of the Rapid Transit Act of
1891 covered all the expenses of the public service commission,
including those incurred in the municipal construction of sub-
ways, and were met by the issue of special revenue bonds as pre-
scribed by said section. By the amendment (Laws of 1912, chap.
226) to said section 10 the board of estimate of the city of New
York was given power to pay such expenses by the sale of the
corporate stock of the city. *Held,* that it was not intended by
said amendment to provide an exclusive remedy for the payment
of the expenses of the public service commission in connection
with municipal construction but only to provide an additional or
optional method by which the city could make such payments.
*Held,* further, that the provision made by previous city adminis-
trations for the payment of the expenses of said commission by
the issuance of special revenue bonds as prescribed by said
section 10 was proper and legal.

The expenses of the public service commission in 1918, which
could properly be charged to the cost of construction, have been
met by the sale of special revenue bonds which are outstanding.

**348**          SCHIEFFELIN *v.* HYLAN.

The sale of an issue of $4,500,000 of the corporate stock of the city was authorized by resolution of the board of estimate on the theory that the expenses of the public service commission for engineering, legal expenses, superintendence, etc., were properly chargeable to the construction of the rapid transit railway and that although such expenses had theretofore been met by the issue of revenue bonds or by the tax levy, nevertheless corporate stock could properly be issued for them, and under said resolution $1,000,000 of said revenue bonds were to be redeemed by the proceeds of the sale of said stock. *Held*, that as the resolution if carried out would diminish the city's debt limit and increase its interest charges, a taxpayer's action attacking the resolution, so far as it related to the expenses of the commission for the years prior to 1919, was the proper remedy, and the illegality of said resolution being clear, an injunction to restrain action pursuant thereto will be granted.

That as the resolution would reverse the policy adopted by previous administrations, the city could not issue stock to cover expenses that had already been taken care of in other ways by action of the municipal authorities.

The provisions of section 235 of the Greater New York Charter must be read in connection with the other sections thereof expressly requiring that special revenue bonds shall be met in only one way, namely, by their inclusion in the tax levy for the succeeding year and the proposed issue of corporate stock cannot be deemed a " refunding " under said section.

The payment of the balance of the proceeds of the proposed sale of corporate stock, to wit, $3,500,000, into the general fund, was clearly illegal as that would mean the use of money for purposes prohibited by the charter.

The fact that in different years prior to 1916 corporate stock was issued to cover unpaid taxes was no precedent for the present action of the board of estimate, for since those issues were authorized, the charter provisions have been amended by chapter 615 of the laws of that year.

The personnel of a city administration has no bearing upon the legality of its acts, and action taken by a city administration in 1914 entirely similar to the action of the board of estimate herein questioned, which is determined to be illegal, is equally so; and the present action cannot be justified because the earlier administration disregarded the law, nor can the plaintiff herein be denied the relief asked, because he took no action to prevent the consummation of the prior legality.

APPLICATION for an injunction.

Leonard M. Wallstein, for plaintiff.

William P. Burr, corporation counsel (John Lehman, of counsel), for defendants.

CROPSEY, J. An injunction is sought to prevent the carrying out of a resolution of the board of estimate of the city of New York. The resolution provides for the sale of $4,500,000 of corporate stock of the city (long term bonds). The proceeds of $1,000,000 of this stock are "for redemption of special revenue bonds issued for the purpose of providing funds to meet the expenses of the public service commission." The proceeds of the balance ($3,500,000) are "to be paid into the general fund for the reduction of taxation." The entire issue has been authorized on the theory that certain expenses of the public service commission for engineering, legal expenses, superintendence, etc., were properly chargeable to the cost of construction of the rapid transit railroads under the law and although such expenses have heretofore been met by the issue of revenue bonds or by the tax levy nevertheless corporate stock may now be issued for the amount of them.

It is conceded that since the amendment of 1912 (chap. 226) to section 10 of the Rapid Transit Act (Laws 1891, chap. 4) corporate stock could have been issued originally to meet the expenses in question of the public service commission. It is further conceded that that method of paying those expenses would have been preferable and had corporate stock been issued at the time no complaint would have been made. The expenses in question are recognized as properly forming a part of the cost of construction of the subways

and as they are revenue producing improvements their cost may more properly be represented by corporate stock than by being paid out of the tax levy. And so the plaintiff concedes further that the action of the defendants with regard to the 1919 expenses was proper and desirable. That action was to the effect that the expenses in question for the coming year should be paid from the proceeds of the sale of corporate stock.

This proceeding attacks the action of the board of estimate only in so far as it relates to the expenses of the public service commission for the years prior to 1919. The resolution which is assailed would reverse the policy adopted by the previous administrations. The question is can the city now issue corporate stock to cover these expenses that have already been taken care of in other ways by action of the city authorities.

With the exception of the period from March 18, 1913, to the end of the year 1914 all the expenses in question of the public service commission have been met by the issue of special revenue bonds which in turn (except those issued in 1918) have gone into the tax levy for the succeeding year. Those issued in 1918 will go into the tax levy for this year (1919) unless the action of the board of estimate is upheld. The proceeds of the proposed sale of $1,000,000 of the corporate stock is to pay these revenue bonds.

The plaintiff claims that since the 1912 amendment to section 10 of the Rapid Transit Act the city has had the option of paying these expenses in either one of two ways. That is, either by the issue of special revenue bonds, followed by the inclusion of them in the succeeding year's tax levy or by the issue of corporate stock in the first instance. And the further claim is made that the city having elected which of

these two methods should be followed, and having determined that they should be paid by the issue of special revenue bonds, this action cannot now be changed or reversed.

The defendants claim that the city has had no option in the matter; that corporate stock should have been issued at all times since the 1912 amendment and that special revenue bonds should not have been issued — that they were not authorized by statute and so were illegal and hence that the corporate stock may issue now.

In the Rapid Transit Act, as originally passed, section 10 provided for the payment of the expenses of the commission by the issuance of special revenue bonds to be paid in the following year's tax levy. At that time the only expenses which the commissioners could have incurred were those connected with the preliminary work of fixing routes, etc. No municipal construction was permitted or even contemplated under the terms of that act.

In 1912 (chap. 226) section 10 was amended. No change was made in its provisions regarding the payment of the expenses but a new sentence was added immediately following those provisions. This empowered the board of estimate to pay certain specified expenses by the sale of corporate stock. The expenses that might be so met were those incurred in connection with the municipal construction of the subways. But such construction by the city was not first authorized by the act of 1912. That had been provided for in 1909 (chap. 498), and the forerunners of the sections mentioned in the 1912 amendment to section 10 were enacted in this 1909 amendment. And section 10 was also amended by the same act in 1909 though no change was made in the portion of it relating to the payment of the commission's expenses. So from 1909 to 1912

section 10 covered all the expenses of the commission including those incurred in the municipal construction, and all of the expenses during those years had to be met by the issue of special revenue bonds as the terms of section 10 specifically prescribed. So when the amendment of 1912 was enacted it seems clear that it was not intended to provide an exclusive method for the payment of the commission's expenses in connection with municipal construction but only to provide an additional or optional method by which the city could make such payments.

Section 37 of the Rapid Transit Act (Laws of 1909, chap. 498) does not cover these expenses. That relates to the cost of physical construction and equipment and covers expenditures which would not be made through the public service commission. Section 10 expressly covers the expenses of the commission. Until 1912 these expenses of the commission could not be paid from corporate stock sales. Since the amendment of that year they could have been paid either by the sale of special revenue bonds or corporate stock. If this be so it follows, of course, that the provision made by the previous city administrations for the payment of the commission's expenses by the issuance of special revenue bonds was proper and legal.

Can the present board of estimate now reverse the action of its predecessors? That is what the resolution in question really attempts to do. The expenses of the public service commission in 1918 which could properly be charged to the cost of construction have been met by the sale of special revenue bonds which are still outstanding. The resolution in question would have $1,000,000 of those bonds redeemed by the proceeds from the proposed sale of corporate stock. If not so met all of these bonds would have to be included in the tax levy for this year (1919) and thus paid.

This would be done automatically. The charter provides that all special revenue bonds must be included in the tax levy of the year succeeding that in which they were issued. § 187. Can the board of estimate now substitute corporate stock for these bonds? The defendants do not claim that corporate stock can be issued to replace revenue bonds — not as a general thing. To do so would be in violation of the charter provisions. § 169. But the defendants do claim that it can be done in this instance because the issue of these special revenue bonds originally was illegal and that they were issued only " pending the issue of corporate stock therefor." But, as has been shown, the issue of the special revenue bonds was not illegal. It was one of the two authorized methods of paying these expenses. And there is no provision of law for issuing special revenue bonds " pending " the issue of corporate stock. The charter expressly provides for the issuance of " corporate stock notes " in anticipation or pending the issuance of corporate stock — special revenue bonds may not be issued for such a purpose. § 189.

Not only does the charter require all special revenue bonds to be paid from the succeeding year's tax levy (§ 187), but section 10 of the Rapid Transit Act expressly so provides as to these very payments if the city shall determine in the first instance to pay them in this manner rather than by the sale of corporate stock.

The proposed issue of corporate stock cannot be deemed a " refunding " under section 235 of the charter. The provisions of that section must be read in connection with the other sections of the charter expressly requiring that special revenue bonds shall be met in only one way, namely, by their inclusion in the succeeding year's tax levy.

23

The situation is slightly different as to the provision relating to the $3,500,000 of the proposed corporate stock. That amount is not to be paid to discharge special revenue bonds or bonds or obligations of any kind of the city. That amount the resolution provides shall " be paid into the general fund for the reduction of taxation." It would pay no specific debt or obligation. It would merely furnish so much additional funds applicable by the city for its general needs. The sum to the credit of the general fund has to be deducted from the sums necessary to be raised by taxation. Charter, § 900. So the payment of this sum into the general fund would result in reducing the tax rate and would merely dispense with the necessity for raising an equal amount by taxation to cover the needs of the city for the current year. It cannot be claimed there is any " refunding " as to this amount, for section 235 says that such bonds may be issued for the purpose only of paying " any stocks or bonds outstanding." The charter (§ 169) prohibits the use of the proceeds of the sale of corporate stock to pay the city's " operating expenses " and specifically provides that corporate stock cannot be issued for " other than revenue producing improvements," with a few exceptions which do not affect this matter. This is the so-called " pay as you go " provision of the charter added by chapter 615, Laws of 1916. Paying the proceeds of the proposed sale of corporate stock into the general fund would mean the use of the money for the very purposes prohibited by the charter. It is unquestioned that a city can issue bonds only as expressly authorized by statute and unless so authorized they are void. *Merrill* v. *Monticello,* 138 U. S. 673; *Wells* v. *Town of Salina,* 119 N. Y. 280. The city has no general power in the absence of express statute to issue corporate stock or bonds to reimburse its

treasury for payments made from it. *Coffin* v. *City of Indianapolis,* 59 Fed. Repr. 221. See also *City of Oneida* v. *King,* 116 App. Div. 35.

Each year since the 1912 amendment the city has had the option of determining which of the two methods of payment should be followed and each year it has made its determination and has carried it out. Now a new administration seeks to upset and undo all that has been done in the years past by prior administrations. To permit such a course to be followed would work havoc. It would make conditions chaotic. There would be no finality to any action, for each succeeding administration could undo what any of its predecessors had done or could even reverse itself. And if it were permissible to substitute corporate stock for revenue bonds or pay the proceeds of a corporate stock sale into the general fund after the expenses to cover which the stock was issued had been met by being included in the tax levy it would be equally proper to pay off corporate stock before maturity (if its provisions permitted or its holders were willing) and include the whole amount of it in the tax levy. And so this process could be followed by each succeeding administration; one administration changing it one way and the next reversing that action. Fortunately this cannot be done under the law. Such action has been condemned by the courts. When a municipality or one of its boards or departments has lawfully adopted a policy or has resolved to proceed in a certain way and that policy or action has been carried out it cannot be rescinded or changed though a different policy or action might originally have been equally valid. The policy having been determined and the action taken and carried out under authority of law the power to change or rescind does not exist. *Bigler* v. *City of New York,* 5 Abb. N. C. 51, 64,

Supreme Court, February, 1919.    [Vol. 106.

and notes at pp. 51, 65; *Staples* v. *City of Bridge-
port,* 75 Conn. 509; *Mitchell* v. *Brown,* 18 N. H. 315;
*Pond* v. *Negus,* 3 Mass. 230; *Brady* v. *City of Brook-
lyn,* 1 Barb. 584, 591; 2 Dillon Mun. Corp. (5th ed.)
§ 539; 1 Beach Pub. Corp. § 368.

Defendants' papers show that corporate stock was
issued in different years prior to 1916 to cover unpaid
taxes. This would be no precedent for the present
action, for the charter provisions, since those issues
were authorized, have been amended. Laws of 1916,
chap. 615. But action entirely similar to the present
action was taken by a prior city administration in 1914.
As it is determined that the present action is illegal
it follows that that prior action was equally so. The
personnel of an administration has no bearing upon
the legality of its acts. If an act is illegal it cannot be
justified because some other administration has also
disregarded the law. Nor can the relief demanded
be denied because the plaintiff did not take action
to prevent such prior illegality from being consum-
mated. Even if his conduct subjected him to criticism
it would be no reason for refusing to enjoin the con-
summation of this illegal action.

A taxpayer's action is proper. The proposed action
of the board of estimate would result in diminishing
the city's debt limit and in increasing its interest
charges.

It is to be regretted that the need of a prompt
decision has made it impossible to give more time to
the preparation of this opinion but the illegality of the
proposed action seems so clear that it is the duty of
the court to grant the injunction sought.

Application granted.