In the Matter of the Application of WILLIAM JAY SCHIEFFELIN, Respondent, against JAMES J. WALKER, as Mayor of the City of New York, and Others, Appellants.

CHARLES W. BERRY, as Comptroller of the City of New York, Respondent.

First Department, December 16, 1927.

Municipal corporations — taxation — mandamus to direct elimination from New York city budget of appropriation for 1928 amortization installment on rapid transit corporate stock — appropriation was made without estimate and certificate of comptroller — under Greater New York Charter, §§ 206 and 229, estimate and certificate by comptroller are necessary as basis for appropriation for amortization of city debt — debt in question is city debt — appropriation is stricken out.

The 1928 budget for the city of New York contains appropriation for the 1928 amortization installment on rapid transit corporate stock for the independent subway system maturing in 1929, 1930 and 1931, for $13,000,000. The board of estimate acted in placing such appropriation in the budget without the estimate and certificate of the city comptroller as a basis therefor, and in doing so it acted beyond its power and jurisdiction.

Under sections 206 and 229 of the Greater New York Charter an estimate and certificate by the comptroller as the basis for an appropriation for amortization of a city debt are required.

The rapid transit corporate stock constitutes a city debt for which the general credit of the city is pledged, for while there is a provision in sections 27 and 37 of the Rapid Transit Act for a sinking fund, that provision relates only to rentals and revenues derived·from the operation of the railroad and to the extent that such rentals and revenues are non-existent or insufficient to provide for payment of rapid transit bonds, such bonds are those " for which no provision for payment thereof otherwise than from taxation is made " within the meaning of section 206 of the Greater New York Charter.

The contention by the board of estimate that because its members are legislatively created and charged with a specific duty, it is in the exercise of their discretion to determine what items shall be included in the budget, and that the method and manner by which a debt for rapid transit purposes shall be financed and met, must be determined by them, and that the judgment of the comptroller should not be substituted for its judgment, cannot be sustained, because the Greater New York Charter specifically restricts the board of estimate from making an appropriation of this character without an estimate and certificate of the comptroller.

The purpose of the certificate and estimate of the comptroller is to safeguard the city's credit and to protect the taxpayers to the end that appropriations made are not larger than necessary.

APPEAL by the defendants, James J. Walker and others, from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 5th day of December, 1927.

*William E. C. Mayer* of counsel [*John Lehman* of special counsel; *George P. Nicholson, Corporation Counsel*], for the appellants.

*Leonard M. Wallstein*, for the relator, respondent.

*Robert Jordan*, for the respondent Berry.

*William G. Fullen* and *John F. X. McGohey*, of counsel for the Board of Transportation of The City of New York, appearing as *amicus curiæ*.

Order affirmed, with ten dollars costs and disbursements to the respondents, on the opinion of WASSERVOGEL, J., at Special Term.

Present — DOWLING, P. J., MERRELL, MARTIN, O'MALLEY and PROSKAUER, JJ.

The following is the opinion of the court below:

WASSERVOGEL, J. The relator has applied for a peremptory mandamus order to direct the elimination from the New York city budget for 1928 of the appropriation contained in code 3023 of said budget reading as follows: "Code 3023. For the 1928 amortization installment on Rapid Transit corporate stock for the independent subway system maturing in 1929, 1930 and 1931, $13,000,000."*

It was conceded upon the argument by counsel for the respective parties that no issue of fact is raised by the answers of the respondents to the petition and the affidavits submitted, and that the parties are in substantial accord upon the facts. Was the appropriation of $13,000,000 in code 3023 of the city budget for 1928 above set forth legal without the estimate and certificate of the comptroller as a basis therefor? The answer to this question

---

* See New York Local Laws of 1927, No. 15.— [REP.

is determinative of this motion.   With the wisdom of the financial policy wherein the proposed appropriation is involved the court is not concerned.   As was stated by Judge HISCOCK in passing upon the validity of the dual subway contracts executed under the Rapid Transit Act (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110): " If the municipality and the various officials acting in its behalf have the power to make them [*i. e.*, the contracts] then the questions whether it is wise to do so and whether their terms are advantageous for the municipality and public are solely for the consideration and decision of those officials."

Whether the five-cent fare on the city subway shall be maintained is not here involved.   The only question to be determined is whether the inclusion of the appropriation above referred to in the budget was under the circumstances hereinafter disclosed beyond the power of the board of estimate.   At a meeting of the board of estimate and apportionment held October 27, 1927, the board, at the request of the board of transportation and over the protest of the comptroller, adopted the following resolution:

" *Resolved*, By the Board of Estimate and Apportionment, in relation to various authorizations of Rapid Transit corporate stock of the City of New York heretofore made, pursuant to the provisions of section 37 of the Rapid Transit Act, the provisions of section 45 of the Greater New York Charter, and the requisitions of the Board of Transportation, for the construction of the city independent system of rapid transit railroads, that the term of the corporate stock thereby authorized, to the extent of Fifty-two million dollars ($52,000,000.00) now unissued, shall be   four (4) years from the date of issue, and that the term of the balance of such various authorizations of corporate stock, unissued, shall be fixed and determined by resolution or resolutions to be adopted by this Board from time to time, and be it further

*Resolved*, That the Board of Estimate and Apportionment hereby authorizes the Comptroller of the City of New York to issue and sell, before December 31, 1927, corporate stock to the par value of Fifty-two million dollars ($52,000,000.00), being that portion of the above mentioned various authorizations, as to which a term of four (4) years is hereinbefore fixed."

The statutes referred to in the resolution govern the issue of corporate stock for subway construction.   Section 37, subdivision 1, of the Rapid Transit Act* provides that " For the purpose of providing the necessary means for such construction, or equipment,

---

* Laws of 1891, chap. 4, § 37, subd. 1, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498, and Laws of 1921, chap. 608,   See Pub. Serv. Comm. Law, §§ 134, 138, as added by Laws of 1924, chap. 573.— [REP.

or both, * * * of any such road or roads * * *, the board of estimate and apportionment * * *, from time to time, and as the same shall be necessary * * * shall direct the comptroller * * *, and it shall thereupon become his duty, to issue the bonds of said city."

Section 45 of the Greater New York Charter,* among other things, provides: " The board of estimate and apportionment and the comptroller of the city of New York shall, anything herein contained to the contrary notwithstanding, be subject to all the duties and obligations prescribed in said chapter four of the laws of eighteen hundred and ninety-one as amended for the board of estimate and apportionment and comptroller therein mentioned. Upon the execution of any contract made pursuant to chapter four of the laws of eighteen hundred and ninety-one as amended, the board of rapid transit railroad commissioners† may, in its discretion, make request upon the board of estimate and apportionment for the authorization of such corporate stock, either for such amounts from time to time as they shall deem the progress of the work to require, or for the full amount sufficient to pay the entire estimated expense of executing such contract. In case they shall make requisition for the entire amount, the comptroller shall endorse on the contract his certificate that funds are available for the entire contract whenever such stock shall have been authorized to be issued by said board of estimate and apportionment; *and in such case such stock may be issued from time to time thereafter in such amounts as may be necessary to meet the requirements of such contract.*"

It appears that prior to the adoption of the resolution of October 27, 1927, it had been the practice and procedure of the board of estimate, in providing for financing the construction of the subway system, merely to authorize the issue of corporate stock of the city without specifying the terms of such issue; that between May, 1924, and November, 1927, there were sixty-five such authorizations aggregating $174,917,544.85 in amount, and the comptroller was merely authorized to issue corporate stock in a stated sum. In pursuance of such authorizations the comptroller issued fifty-year corporate stock, issuing corporate stock notes when necessary to provide funds in anticipation of a corporate stock sale. By the resolution above quoted the board of estimate departed from its customary practice and undertook (a) to fix at four years (instead of the customary fifty years) the term of $52,000,000 of corporate stock theretofore authorized for the construction of the city

---

* Laws of 1901, chap. 466, § 45, as amd. by Laws of 1907, chap. 439.— [REP.

† Now Board of Transportation of The City of New York. (See Pub. Serv. Comm. Law, §§ 134, 138, as added by Laws of 1924, chap. 573.) — [REP.

independent system of subways, and (b) to authorize the comptroller to issue and sell such corporate stock before December 31, 1927.

The comptroller, an elected official of the city, is by section 97 Greater New York Charter* made the head of the department of finance, and section 149 of the Greater New York Charter† provides that " The department of finance shall have control of the fiscal concerns of the corporation."

Sections 206 and 229 of the Greater New York Charter‡ provide for an estimate and certificate by the comptroller as the basis for an appropriation for amortization of a city debt incurred after January 1, 1898.  The language of section 206 is as follows: " There shall be created a fund to be known as the ' sinking fund of the city of New York,' which shall have for its purposes the liquidation of the principal of the debt of the corporation of the city of New York incurred on or after January first, eighteen hundred and ninety-eight, as to which no provision for the payment thereof otherwise than from taxation is made, and excepting revenue bonds, certificates of indebtedness or other evidences of indebtedness, issued pursuant to the provisions of section one hundred and eighty-seven of this act, serial bonds issued pursuant to the provisions of section one hundred and sixty-nine of this act, and corporate stock notes, tax notes or other obligations issued pursuant to the provisions of section one hundred and eighty-nine of this act, and bonds issued to provide for the supply of water.  For the redemption of such debt out of said sinking fund there shall be annually included in the budget and paid into the sinking fund of the city of New York herein created, *an amount to be estimated and certified by the comptroller, and to be by the board of aldermen and the board of estimate and apportionment inserted in the budget for each year*, which with the accumulations of interest thereon shall be sufficient to meet and discharge such bonds or stocks by the time the same shall be payable."  (Italics ours.)

Section 229 reads: " For the payment of all bonds and stocks of the mayor, aldermen and commonalty of the city of New York issued after June third, eighteen hundred and seventy-eight, and for the payment of all the bonds and stocks hereafter issued by the city of New York, as hereby constituted, and for which no provision for the payment thereof, otherwise than from taxation is made, except revenue bonds issued in anticipation of the collection of taxes, certificates of indebtedness or other evidences of indebted-

* Amd. by Laws of 1905, chap. 633.— [REP.
† Amd. by Laws of 1923, chap. 667.— [REP.
‡ Amd. by Laws of 1915, chap. 309.— [REP.

ness, issued pursuant to the provisions of section one hundred and eighty-seven of this act, serial bonds issued pursuant to the provisions of section one hundred and sixty-nine of this act, and corporate stock notes, tax notes or other obligations issued pursuant to the provisions of section one hundred and eighty-nine of this act, there shall annually be set apart or paid over to the commissioners of the sinking fund, as hereinafter directed, and invested by them in the manner provided by law, a sum sufficient, with the accumulation of interest thereon to meet and discharge the amount of said bonds or stocks by the time the same shall be payable, *as the same shall be estimated and certified by the comptroller.*" (Italics ours.)

City bonds issued for purposes of rapid transit construction are city debt for which the general credit of the city is pledged and constitute "debt of the Corporation of the City of New York incurred on or after January first, eighteen hundred and ninety-eight." The so-called rapid transit sinking fund referred to in sections 27 and 37 of the Rapid Transit Act* consists only of the rentals and revenues derived from the operation of a rapid transit railroad. To the extent that such rentals and revenues are non-existent, as in the instant case, or insufficient to provide for payment of rapid transit bonds, such bonds are those "as to which no provision for the payment thereof otherwise than from taxation is made," within the language of charter section 206. The said debt incurred for rapid transit purposes is, therefore, governed by section 206 of the Greater New York Charter creating for the purpose of securing the payment thereof the "Sinking Fund of the City of New York;" and requiring, as does section 229 also, the comptroller's estimate and certificate of the sum to be appropriated for amortization of such debt.

The appropriation attacked is not supported by such certificate. The statutory requirement is not a mere formality or a technical requirement. It is substantial and consistent with the charter provision (§ 149), that "The department of finance shall have control of the fiscal concerns of the corporation." The department of finance alone has the facts and records essential to the fixation of the amount necessary for debt amortization and is the only department in possession of facts which permit an accurate

---

* See Laws of 1891, chap. 4, § 27, added as § 34-a by Laws of 1906, chap. 472, renum. by Laws of 1909, chap. 498, as amd. by Laws of 1912, chap. 226; Laws of 1891, chap. 4, § 37, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498; Laws of 1911, chap. 888; Laws of 1913, chap. 540; Laws of 1915, chaps. 544, 545; Laws of 1917, chap. 625, and Laws of 1921, chap. 608. See, also, Pub. Serv. Comm. Law, §§ 134, 138, 143, as added by Laws of 1924, chap. 573.— [REP.

estimate of the sums needed for that purpose. The comptroller in his answer states: " To issue said stock prior to December 31, 1927, would involve an indefensible waste of public funds. Such waste would result from the facts, first, that none of the outstanding corporate stock notes issued to obtain funds for construction of the independent city subway system will mature prior to December 31st, 1927, so that interest on such notes will have to be paid and such interest would be duplicated, until the maturity date of said notes, if the said corporate stock were issued prior to the maturity of the said notes; secondly, there are not and will not be prior to December 31, 1927, outstanding corporate stock notes issued to obtain funds for construction of the independent city subway system in an amount aggregating fifty-two million dollars so that to issue such an amount of corporate stock prior to December 31, 1927, would mean the loss to the city of the difference between the interest which it would have to pay on said corporate stock, which would be between four and four and one-half per cent and the interest which it would receive from its depositaries, which is at the rate of two to two and one-half per cent on the proceeds of such sale; thirdly, past experience with reference to the need of funds for the construction of the independent city subway system shows beyond doubt that there will be no need prior to December 31, 1927, of the difference between the amount of said corporate stock notes now outstanding and said sum of $52,000,000.00.

" Compliance with the provisions of the resolution adopted by the Board of Estimate and Apportionment on October 27, 1927, would result in an actual waste of public funds, amounting to nearly $230,000."

It is the contention of the board of estimate that because its members are " legislatively created and charged with the specific duty of, in the exercise of a discretion, determining what items shall be included in such budget and the method and manner by which a debt for rapid transit purposes shall be financed and met," the court should not require the substitution of its judgment or that of another for the judgment of the board of estimate. This argument, however, overlooks the fact that, as was aptly stated by Mr. Justice PUTNAM in *Schieffelin* v. *Hylan* (188 App. Div. 192, 200): " The board of estimate and apportionment can only act under and in accordance with the statutory authority, in strict compliance with the provisions by which that power is limited and conditioned."

The purpose of the requirement of the certificate and estimate of the comptroller is first to safeguard the city's credit so that enough money is appropriated to insure payment of the city debt

at maturity, and secondly to protect the taxpayers to the end that the appropriation made is not larger than necessary and, therefore, an unnecessary burden upon them. The comptroller does not dispute the contention that the board of estimate may direct him to issue bonds for rapid transit purposes. The comptroller does dispute the right of the board of estimate to direct him to sell those bonds at a particular time or within a particular period regardless of money market conditions. Counsel for the board of transportation, appearing *amicus curiœ* in the brief submitted by him, urges that " The Board of Estimate and Apportionment * * * has taken all the action necessary to effect a financial policy, and surely there exists no right in a third party, not even a taxpayer, to compel this court to change the budget items so as to meet the peculiar and special idea of that individual taxpayer or the Comptroller of the City of New York and thereby destroy that policy agreed upon by the majority."

Counsel, however, fails to note the fact that the Legislature has placed certain responsibilities upon the comptroller and has given him certain duties to perform, and not the least of these is that which requires as the basis of an appropriation such as that involved here the estimate and certificate of the comptroller. Neither the board of estimate nor the court may disregard the statutory requirement.

The remedy invoked by the relator is proper, and the application for an order of peremptory mandamus is granted. Settle order on notice.