HELEN C. WILMERDING, Plaintiff, *v.* FIORELLO H. LAGUARDIA, as Mayor, and Others, Defendants.

Supreme Court. Special Term. New York County, January 31, 1941.

*Nordlinger, Riegelman & Cooper* [*Harold Riegelman* and *Jacob M. Dinnes* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel* [*Spencer Byard* of counsel], for the defendants.

VALENTE, J. This is a motion by the plaintiff for judgment on the pleadings in her favor pursuant to rule 112 of the Rules of Civil Practice. Under that rule the court may give judgment for either party " without regard to which party makes the motion," and defendants accordingly request judgment in their favor.

The action is a taxpayer's action pursuant to section 51 of the General Municipal Law, brought by plaintiff, a real estate taxpayer of the city of New York, to enjoin the defendants from using any part of the proceeds of the occupancy tax for purposes other than " municipal periodic [housing] subsidies." The complaint alleges that the budget adopted for the fiscal year commencing July 1, 1940, contains an appropriation of only $75,000 for housing subsidies, whereas the receipts of the occupancy tax will amount to $500,000. Plaintiff charges that the defendants intend and threaten to use the difference of $425,000 to meet expenditures for purposes other than annual housing subsidies. She claims that the receipts derived from the occupancy tax must be devoted exclusively to housing subsidies and that the defendants may not legally use any part of said receipts for other purposes.

Plaintiff's contention that the State Legislature intended that the proceeds of the occupancy tax which it authorized the city to impose were to be used only for the purpose of making municipal periodic housing subsidies is founded upon the provisions of sections 94 and 110 of the Public Housing Law. (Laws of 1939, chap. 808.) Section 94 provides in part that " A municipality may levy one or more of the taxes enumerated in section one hundred ten, and the revenues resulting from the imposition of such tax or taxes shall be paid into the treasury of the municipality and shall be credited or deposited in the general or other fund available for current expenses of the municipality, and may be used for the purpose of making municipal periodic subsidies."

Section 110 provides that " In order to obtain funds with which to make periodic subsidies pursuant to section ninety-four a city may, and in order to incur indebtedness pursuant to the provisions of section ninety of this chapter, in excess of the limitations prescribed by any article of the Constitution, other than article eighteen, a city shall, levy one or more of the following taxes:

" * * *

" (c) An excise tax on occupancy. Such tax may be imposed upon any individual, copartnership or corporation occupying premises in such municipality as the owner, tenant or concessionaire for residence or for any gainful purpose. Such tax shall be in an amount of not more than twelve dollars per year for each separate premises so occupied, the rate of tax to depend upon the size of such premises or upon such other reasonable standard as may be fixed by local law."

Plaintiff argues that since the levy of an occupancy tax by the city was authorized by the Legislature only for the purpose of enabling the city to obtain funds for housing subsidies, the proceeds of the occupancy tax may only be used for such purpose. Plaintiff urges that in construing the provision of section 94 that the revenues resulting from the taxes enumerated in section 110 " may be used for the purpose of making municipal periodic subsidies," the word " may " should be read as " must."

In the court's opinion, the history of the legislation authorizing the imposition of taxes by the city for housing subsidies, as well as the provisions of the Constitution adopted in 1938 and the language of various provisions of the Public Housing Law, require a contrary conclusion

In 1934 the Municipal Housing Authorities Law was enacted, authorizing municipalities to establish housing authorities in order to avail themselves of Federal grants for low rent subsidized housing provided for under the Public Works Administration. In 1938 section 72 of the State Housing Law was amended (Laws of 1938, chap. 395) to provide that bonds issued for a non-Federal project in the city of New York could include provision that the amount necessary to pay the interest thereof until maturity be paid by the city to the Municipal Housing Authority. This amendment specifically authorized the city " for the purpose of meeting such payments to the authority " to enact local laws imposing an occupation tax, and specifically provided that the revenues resulting from the tax were *not* to be " deposited in the general fund of any such city " but were to " be deposited in a separate bank account or accounts " and were to " be available and used solely and exclusively for the purposes aforesaid." Pursuant to this

amendment, the city of New York enacted Local Law No. 18 of the City of New York for the year 1938, imposing an occupancy tax, the proceeds of which were to be deposited in a special fund of the city and used for annual subsidies to the New York City Housing Authority  Thereafter the new State Constitution was adopted. Section 2 of article XVIII granted power to the Legislature to " authorize any city, town or village to make or contract to make * * * subsidies to any public corporation, *payable only with moneys locally appropriated therefor from the general or other fund available for current expenses of such municipality* " (Italics the court's.)  Subsequently, section 72 of the State Housing Law was amended by chapter 35 of the Laws of 1939 to provide that revenues theretofore or thereafter collected by a city from taxes authorized by that section be deposited in the general fund of the city. The bill as proposed to the Legislature by the city contained an express provision for the segregation of the funds resulting from the occupancy tax, but this provision was stricken from the bill before it was enacted into law.  To conform to the Constitution and to the statute, the provisions of Local Law No. 18 of the City of New York for 1938, previously referred to, were modified so as to change the depository of the occupancy tax from a segregated special fund to the general fund of the city.

In June, 1939, the Public Housing Law was enacted.  Section 94, part of which has already been quoted, specifically provides that the revenues resulting from the taxes authorized by section 110 of that statute " shall be credited or deposited in the general or other fund available for current expenses of the municipality." Section 112 of the same statute declares that " Revenues heretofore or hereafter resulting from the imposition of taxes authorized by this article shall be paid into the treasury of such city and shall be credited or deposited in the general fund of such city."

Under the provisions of the Charter of New York City the general fund contains all receipts of every kind, not pledged to any special fund, except receipts from real estate taxes (N. Y. City Charter, § 130) and the receipts from said general fund must be deducted by the city council from the amount of the budget in order to determine the amount necessary to be raised by the real estate tax levy.  (§§ 168, 169.)  In other words, the general fund must under the provisions of the Charter be employed to meet municipal expenses generally and to reduce the real estate taxes to be evied.

The clear and explicit directions contained in the Constitution and in the Public Housing Law, to the effect that the revenues from the occupancy tax and from the other taxes authorized are to be

deposited in the general fund of the city, would seem to indicate that it was intended that the receipts from such taxes were not to be used only and exclusively for housing purposes. The fact that the express provisions for segregation of the revenues derived from the occupancy tax, contained in section 72 of the State Housing Law and in Local Law No 18 of the City of New York for 1938 prior to the adoption of the 1938 Constitution, were eliminated and were replaced in the Constitution and in subsequent statutes by provisions that said receipts were to be deposited in the general fund is of the utmost significance    Provisions in the Administrative Code of the City of New York for the accumulation of surplus revenues which existed prior to the adoption of the Constitution were also eliminated after the Constitution took effect. Had it been contemplated that the revenues from the occupancy tax were to be used only for housing purposes and that any surplus revenues above what was currently necessary for those purposes were to be accumulated, express provision for segregation or accumulation would have been made as in the case of the various emergency taxes authorized for the relief of unemployment. (Laws of 1934, chap. 873, as amd. by Laws of 1939, chap. 659, and Laws of 1940, chap. 245.)

In the light of the foregoing, it would seem clear that the word "may," as used in section 94 of the Public Housing Law, must be interpreted in its ordinary permissive sense rather than in its mandatory significance.

It follows that the defendants may lawfully use the difference between the revenues derived from the occupancy tax and the amount presently necessary for housing subsidies for general city purposes, and that they need not accumulate the same as a reserve for housing subsidies for future use, as plaintiff contends.

In view of this disposition, it is unnecessary to consider whether a taxpayer's action would lie in the present situation, even if plaintiff were right in her claim that the $425,000 may not legally be used except for housing subsidies. Defendants refer to the well-settled rule that a taxpayer's action will not lie on a mere showing of illegality without waste or injury to the municipal and public interests and thus to the taxpayer himself. (*Western New York Water Co.* v. *Buffalo,* 242 N. Y. 202.) They argue with considerable force that even if the use of the $425,000 for general city purposes be deemed illegal, the plaintiff, as a real estate taxpayer, is in no way injured thereby. The amount to be raised by way of real estate taxes is *reduced* to the extent of $425,000 and plaintiff's share of such real estate taxes reduced proportionately. The worst that can happen to the plaintiff is that in subsequent years she may

be obliged to pay higher real estate taxes than those which would be imposed if the $425,000 were kept as a reserve, but the resulting increase will merely offset the decrease in this year's taxes unless the tax rate be higher, which is purely speculative. Cases such as *Schieffelin* v. *Hylan* (188 App. Div. 192; affd., 227 N. Y. 593) and *Osborn* v. *O'Brien* (239 App. Div. 453; affd., 264 N. Y. 469) are clearly distinguishable. In the former the proposed issuance of long term securities would, it was pointed out, not only diminish the borrowing capacity of the city but also require the payment of annual interest charges. In the latter the city was enjoined from making payments for expenses which it had no right to meet out of funds raised by taxation and which, therefore, caused financial injury to taxpayers. In *McCabe* v. *Gross* (274 N. Y. 39) only " a single constitutional question " was presented (p. 42) and the question of whether a taxpayer's action was proper does not appear to have been raised. In various other cases cited by plaintiff the acts complained of were not merely illegal, but in addition worked financial detriment to the complaining taxpayers. However, in view of the importance of the substantive question presented, the court has preferred to base its decision upon the merits rather than upon the technical question of whether a taxpayer's action may be maintained.

A prior motion by the defendants to dismiss the complaint for insufficiency was denied and a cross-motion by the plaintiff for a temporary injunction likewise denied. No opinions were written. Plaintiff maintains that the denial of the motion to dismiss the complaint established as the law of the case that the use of the proceeds of the occupancy tax for purposes other than housing subsidies is illegal. It is obvious, however, that this is not the correct interpretation of the holding referred to. Otherwise, the plaintiff's motion for a temporary injunction should have been granted, for no factual issues were presented, and if the plaintiff's legal position were correct, she would have been entitled to injunctive relief. The denial of the motion to dismiss the complaint was merely a holding that the action was one in which the court could properly take jurisdiction for the purpose of rendering a declaratory judgment as to plaintiff's rights. It was not a determination that plaintiff was entitled to a declaratory judgment in her favor. (See *Bank of Yorktown* v. *Boland*, Mr. Justice PECORA, 172 Misc. 885; affd., 259 App. Div. 987; affd., 284 N. Y. 749.)

The plaintiff's motion for judgment on the pleadings is accordingly denied and judgment is directed in favor of the defendants. Settle order.