William R. Beenxax, Jr., J.
Both sides move for summary judgment in this taxpayer’s action brought pursuant to section 51 of the General Municipal Law. The complaint seeks a judgment declaring certain items in the 1963 budget of the Town of Hempstead illegal and enjoining the defendants from levying and collecting such portions of the 1963 town highway tax as are attributable to the alleged illegal items.
Such facts as are before the court are not in dispute. Sometime prior to October 30, 1962, the town officials, pursuant to law, formulated the preliminary 1963 budget and provided for a public hearing on that date. Plaintiff appeared at the public hearing and attacked at least two items in the preliminary budget as being illegal. The first of these was one in the amount of $445,439.18 which was set forth at “ Highway Item No. 1 ” and was designated by the authors of the preliminary budget as “Contingency”. It was the contention of the plaintiff that such provision constituted a violation of section 112 (subd. 2, par. [a]) of the Town Law. The second item was one in the sum of $230,875.93 contained in “ Highway Item No. 3 ”, and it was the contention of the plaintiff that the portion of the appropriation in excess of the sum of $200,000 was contrary to the limitation imposed by section 271 of the Highway Law of the State of New York and, accordingly, illegal and void to the extent of $30,875.93.
Apparently somewhat impressed by the first legal objection, the Town Board on November 2, 1962, by resolution adopting the budget, modified the preliminary budget, not by eliminating the $445,439.18 item, but by changing the description thereof from “Contingency” to “Operational Reserve.” Plaintiff now attacks the legality of the “ Operational Reserve,” and claims that in fact, if not in name, it is still a contingent item prohibited by law. As a final confusion in this labyrinth of labels, somewhat reminiscent of Robert Benchley’s “ Treasurer’s Report,” the Town Board on January 8, 1963, after this action was commenced, established by resolution a so-called *884 ‘‘ Repair Reserve Fund,” and thereafter transferred to that fund the same $445,439.18 previously budgeted as “ Operational Reserve.”
The first question presented is simply whether or not the $445,439.18 item is in fact such a contingent appropriation as is barred by law, regardless of what name is given it. Ordinarily this would call for a factual determination to be made upon a trial, or to be ascertained upon affidavits and documentary proof on a motion of this kind. In making the motion, and in opposing the cross motion, the Town Board could well have annexed, as part of its moving papers, an affidavit of the Town Superintendent of Highways shedding some light upon the true purpose of the budgeted item. It did not do so. The board could have submitted pertinent extracts of the departmental requests from which the budget is made. It did not do so. It could have submitted the preliminary budget and the final adopted budget, or extracts thereof. It did not do so. It could have come forward with facts showing how the precise figure of $445,439.18 was arrived at, i.e., whether it was a total of a number of smaller figures, a flat percentage of a larger figure, a carry-over of a prior unexpended budgetary item, or a wild guess. Again, it did not do so.
This failure to come forward with an explanation, when taken together with the actions of the board in adopting the resolutions of November 2 and January 8, leads the court to agree with both parties that there is no factual dispute, and that this is a proper case for summary judgment.
The Town Board is prohibited by law from including in its budget any contingent estimates for the repair and improvement of highways. Section 111 of the Town Law requires that between September 20 and 30 of each year all departments prepare and file detailed estimates of expenditures for the ensuing fiscal year. Subdivision 1 of section 141 of the Highway Law further specifies the items which the Superintendent of the Highway Department must include in Ms detailed estimate.
Between October 5 and 10 each year, after the departmental estimates are made, the Town Board is mandated by section 112 of the Town Law to prepare a preliminary budget containing the estimated revenues and expenditures of the town for the succeeding fiscal year. That estimate must contain (§ 112, subd. 2):
“ (a) An estimate of the several amounts which the town board deems necessary to provide for conducting the business of the town in each office, board and department thereof, sep-
*885 arately stated * * *. The town board may include in such estimate appropriations for contingent purposes as follows: “ (1) For general contingent purposes, an amount not to exceed ten pereentum of the total amount which the town board shall estimate as necessary to provide for the operation of town government exclusive of * * * estimates for the repair and improvement of highways and estimates for purposes for which real property taxes are required to be levied on an area less than that of the entire town.
“ (2) For special contingent purposes, an amount not to exceed ten per centum of the total amount which the town board shall estimate as necessary to provide for the operation of town government and for which real property taxes are required to be levied on the area of the town outside of villages exclusive of * * * estimates * * * for the repair and improvement of highways. Taxes to meet the appropriation for special contingent purposes shall be levied on the area of the town outside of villages.” (Emphasis supplied.) The prohibition against using estimates for the repair and improvement of highways as an element in the calculation of the 10% contingency was added to the law in 1959. (L. 1959, ch. 182.) When the Legislature enacted this law, it did so on the basis of a legislative memorandum submitted to it by the Department of Audit and Control, which stated: ‘ ‘ This bill would exclude from the computation for either contingent fund the amount estimated for highway Item I, repair and maintenance of highways. This exclusion is consistent with what is now general practice. It recognizes that appropriations for highway Item I depend largely on state aid revenues and less on tax moneys than other appropriations. A result of including such amount in the computation would be a disproportionately high contingent fund contrary to the desirable detailed and estimated budget contemplated by Town Law § 112 generally.” (Emphasis supplied.)
Even prior to the 1959 amendment, Highway Item No. 1 could not contain contingency items. What was and is contemplated in that item are ‘ ‘ detailed estimates * * * of the amount of * * * expenditures to be made during the next fiscal year ” (Town Law, § 111) for “ the repair and improvement of highways” (Highway Law, § 141, subd. 1). Nowhere in the statutes is any permission granted to the town to include contingencies in these detailed estimates.
Town Boards are creatures of statute and possess no powers other than those conferred by statute. (Holroyd v. Town of *886 Indian Lake, 180 N. Y. 318; Wells v. Town of Salina, 119 N. Y. 280; Brothers v. Town of Leon, 198 App. Div. 144; Olin v. Town of North Hempstead, 34 Misc 2d 853, affd. 18 A D 2d 831.) Section 112 of the Town Law, even before the 1959 amendment, granted to the Town Board only a limited and circumscribed power to include appropriations for contingent purposes not to exceed 10% of the total budget exclusive of debt service and special district purposes. This was the only power granted, and must be construed, under the maxim expressio unius est exclusio alterius, as prohibiting all appropriations for contingent purposes other than those permitted in the statute. The 1959 amendment went one step further. It not only continued the prohibition against contingency items in the detailed departmental budgetary estimates, but also excluded the highway item from the base figure upon which the contingency percentage could be calculated. Thus, the Town Board is clearly prohibited from including in its budget any estimate for repair and improvement of highways which is based on contingent purposes.
The $445,439.18 item contained in the budget was in fact, at the time of its adoption, intended as a contingent item. The Town Board originally labeled it as such. In order to defeat summary judgment against it, the board was required to come forth with evidentiary facts (Shapiro v. Health Ins. Plan, 7 N Y 2d 56; O’Meara Co. v. National Park Bank, 239 N. Y. 386) tending to show that the sum was not contingent, but an estimate for the repair and improvement of highways under Highway Item No. 1. It was precisely at that item of its budget that the town included its “ Operational Reserve,” and it was incumbent upon it to show to the court why it was included there. This it has wholly failed to do. Instead, the town has chosen to rely exclusively upon its affirmative defense, which deals with the transfer of the moneys from the ‘ ‘ Operational Reserve ’ ’ item in the budget to the subsequently created “ Repair Reserve Fund.” As will appear below, this transfer itself is an admission by the town that the moneys were never intended as an “ estimate for the repair and improvement of highways ” under Highway Item No. 1, because the Town Board, by the transfer, has so earmarked and immobilized the funds that they can never be used for such purposes.
The Repair Reserve Fund was established in purported reliance upon section 6-d of the General Municipal Law. Such a fund is created for use in cases of emergency and may be expended only for special purposes upon special resolution following a public hearing, and provided that repayment thereof is made within the two ensuing fiscal years. Among the limited *887 permitted purposes are repairs of capital improvements or equipment, which repairs are of a type not recurring annually.
Appropriations under Highway Item No. 1 cannot contain items of a type not recurring annually, but are specifically limited by statute to such as arise during the next fiscal year. They are for general rather than special purposes. They provide for the systematic and regular needs of the Highway Department rather than for unusual needs which arise only in cases of emergency. Since emergencies with reference to current maintenance of highways may be met by established means (cf. Highway Law, § 55; Local Finance Law, § 29.00), in addition to appropriations from unexpended balances and surplus moneys (cf. 11 Op. St. Comp., 1955, p. 681; 16 Op. St. Comp., 1960, p. 358), it is obvious that the General Municipal Law provisions do not apply to current maintenance and operations, but contemplate solely expenditures such as would not be encompassed within the provisions of subdivision 1 of section 141 of the Highway Law. Consequently, moneys contained in the budgetary appropriation for “ Operational Reserve ” at Highway Item No. 1, having been transferred to the special emergency “ Repair Reserve Fund,” cannot be used for the purposes for which they were allegedly budgeted in the first place.
Thus, the original label 1 ‘ ¡Contingency ’ ’, the failure to explain, and the subsequent transfer to an entirely different fund lead to the inescapable conclusion that at the time of the adoption of the budget, the $445,439.18 item, though its name had been changed to “ Operational Reserve ”, was still a contingent item, and as such illegal.
Mere illegality, however, is insufficient to warrant relief in this taxpayer’s action. As was stated by former Presiding Justice Nolan, of our Appellate Division, in Ahern v. McNab (7 A D 2d 546, 548-549): “ It is not enough to justify an action under section 51 of the General Municipal Law that the activities complained of may be illegal. It must also be shown that the illegal action is in some way injurious to municipal interests and that, if permitted to continue, it will result in waste of public funds or will otherwise produce some public injury or mischief. (Western N. Y. Water Co. v. City of Buffalo, 242 N. Y. 202; Altschul v. Ludwig, 216 N. Y. 459.) ” (See, also, Olin v. Town of North Hempstead, 11 A D 2d 797.)
If there were any danger that the town would spend the $445,439.18 for illegal or improperly concealed purposes, then injunctive relief might be appropriate. However, in this case, unlike the situation in Wilmerding v. La Guardia (268 App. Div. 496) (where it appeared that $3,500,000 budgeted for “ Unfore *888 seen Expenditures and Sundry Expenses,” was in fact to be used for cost-of-living bonuses for city firemen), the funds are likely to languish in the 11 Repair Reserve Fund,” drawing interest, indefinitely. In any event, by operation of law, no moneys may be expended from the fund except in cases of emergency, and only after public notice and a public hearing. (General Municipal Law, § 6-d,' subd. 2.) Moreover, the members of the Town Board are declared to be trustees of the fund (General Municipal Law, § 6-d, subd. 5), and are guilty of a misdemeanor if they authorize an improper withdrawal or make an improper expenditure therefrom (General Municipal Law, § 6-d, subd. 6). Thus, the statutory safeguards surrounding the fund preclude any probability of waste, and warrant a denial of injunctive relief. (Cf. Coggeshall v. Hennessey, 279 N. Y. 438; Matter of Block v. Sprague, 285 N. Y. 69; People v. Tremaine, 281 N. Y. 1; Matter of Conway v. Sahm, 202 Misc. 519.)
The second question raised by the plaintiff is the alleged illegality of that portion of the appropriation at Highway Item No. 3 in the amount of $230,875.93, which is in excess of $200,000.
Section 271 of the Highway Law imposes limitations on amounts that may be raised by tax upon vote of a Town Board. Clause (1) (of subd. 3, par. a) of that section limits a town in Nassau County to $200,000 except in instances where a larger amount is authorized by vote at a town election.
In appropriating the additional $30,875.93 without an election, the board was apparently relying upon chapter 952 of the Laws of 1961, which law amended the Nassau County Civil Divisions Act in relation to certain expenditures by Town Superintendents of Highways. A thorough reading of this statute, however, reveals no inconsistency with section 271 of the Highway Law. The act merely removes any limitations which may have existed upon the amount that may be expended in any one year for machinery, tools, equipment or implements. It has nothing to do with the amounts which may be raised by tax for Highway Item No. 3. Thus, the budgetary limitation of $200,000 has not been increased by this special act. In fact, under paragraph c of subdivision 3 of section 271, the budgetary and tax levy limitations are specifically stated as not being limitations on the amount of money which may be spent in any fiscal year for any object or purpose described in that subdivision. And, historically, increases in permissible amounts subject to levy and collection by any towns have been made by amendments to the Highway Law. (In 1958 section 271 of the Highway Law was amended five times to increase limits in specific cases. *889 In 1959, nine more amendments were passed. See Governor’s Message on approving chapter 551 of the Laws of 1959, amending section 271 of the Highway Law [Public Papers of Governor Nelson A. Rockefeller, 1959, p. 462].)
Consequently, the appropriation in the budget at Highway Item No. 3 is technically illegal to the extent of $30,875.93. However, what has been said above concerning the necessity for proving waste applies with equal force to this technical illegality, and, since moneys in excess of the budgetary appropriation may be spent in any fiscal year without running afoul of statutory prohibition, the court cannot conceive of an expenditure made under the appropriation which would constitute waste. The authorities above cited again warrant a denial of injunctive relief.