Charles G. Tierney, J.
This is an article 78 (CPLR) proceeding, in the nature of mandamus, wherein petitioners, property owners and residents of MacDougal Street in the area known as G-reenwich Village, seek an order directing respondents, the Mayor, Commissioner of Licenses, and Police Commissioner of the City of New York, to enforce certain provisions of the Administrative Code of the City of New York and Penal Law of the State of New York relating to the operation and *768 maintenance of so-called “ coffee houses ” and the preservation of public order in that street and vicinity.
The gravamen of this application has been set forth heretofore with sufficient particularity on the denial of respondents’ motion, prior to answer, to dismiss the petition for legal insufficiency (see Perazzo v. Lindsay, N. Y. L. J., Aug. 21, 1967, p. 12, col. 6), and further reiteration is unnecessary. Suffice it to say in this respect that ‘ ‘ the complaints of petitioners are well known to those who have followed the extensive reporting of the situation commonly referred to in the metropolitan area press as ‘ the mess on MacDougal Street ’. ’ ’
The moving papers herein are replete with dates, times and places of the illegal acts complained of, from which petitioners, as residents of the community, suffer peculiarly and more directly than the general public. Moreover, it is plain that said violations and noxious activities which have become attendant thereupon are patently offensive to the general welfare, public peace, morals, and safety of this city. Petitioners have alleged in the petition and stated on oral argument that they have repeatedly, but to no avail, communicated with and petitioned respondents to enforce the laws concerned. Thus, as petitioners argue, all avenues of recourse having proven fruitless, if this court does not afford them redress, no other body exists with either the power or the inclination to do so.
It cannot be disputed upon the papers before the court that the illegal and, at times, illicit activities mentioned therein, singly, and certainly cumulatively and collectively, are contributing factors to the madness and unhealthy situation which is rapidly enveloping not only petitioners’ street but the entire Greenwich Village area, affecting thousands of its respectable inhabitants and visitors. As a practical matter, our metropolitan press and television daily recount the sordid details of the accelerated degeneration of this residential and historic area of the city. It is therefore disappointing when respondents, public officials charged with responsibility in the matter, having been directed to answer the petition of an aggrieved citizenry (see Perazzo v. Lindsay, supra), interpose general denials and denials of information sufficient to form a belief as to the truth of allegations which have become common knowledge.
Having made such specious denials, respondents allege as their first affirmative defense that they have duly executed and discharged their duties and obligations pursuant to the Administrative Code and City Charter. The self-serving averments made generally in respondents’ papers that they have at all material times been patrolling the Greenwich Village area and *769 initiating “ appropriate proceedings founded upon violations of law; that they have caused a “traffic study” to be made ‘ ‘ in depth ’ ’; and that they have convened interdepartmental conferences to 11 facilitate co-ordination ’ ’ of the activities of law enforcement, are neither responsive nor sufficient to satisfy the serious charges made by petitioners herein that respondents have failed to remove and correct the unlawful conditions and activities complained of by enforcing the laws, ordinances and regulations specifically mentioned in the petition (55 C. J. S., Mandamus, § 277).
Similarly, respondents’ second affirmative defense, that “ the jurisdiction of this court should not be invoked to compel them to enforce the law by initiating civil, criminal or administrative proceedings”, is, in these circumstances, somewhat less than persuasive. If the actions taken by respondents thus far on petitioners’ complaints have been ineffective, as they would appear to be, the question presented, and unanswered in respondents’ papers, is what other course of “appropriate” action remains other than initiation of civil, criminal or administrative proceedings.
Respondents concede in their answer that no discretion exists on their part in determining whether to enforce the laws in question, and although respondents have not 1 ‘ announced their refusal to act ” in the enforcement thereof (Matter of Carmody v. City of Elmira, 160 Misc. 916, 917), their persistent failure to act when repeatedly requested, can be so interpreted. Moreover, respondents make no showing of any kind whatsoever that either their determination not to enforce, or their indecision in enforcing these statutes and ordinances, was necessitated by overriding reasons all in the superior public interest.
Although this court is the tribunal of general, original jurisdiction over legal matters in the State, it nonetheless cannot entertain every controversy which seeks to enlist the aid of its broad powers of mandamus (Matter of Steinway, 159 N. Y. 250). Generally it may be said that the courts will not seek to enforce laws and ordinances by peremptorily ordering administrative officials to institute proceedings under such laws and ordinances (Matter of 1350 Sixth Ave. Corp. v. Department of Housing & Bldgs, 197 Misc. 982; People ex rel. Clapp v. Listman, 40 Misc. 372, affd. 84 App. Div. 633; 17 McQuillin — Muncipal Corporations [3d ed.], § 51.16, p. 473). In Matter of International Ry. Co. v. Schwab (203 App. Div. 68, 74), it is stated: “ ‘ The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are entrusted by the People to officers chosen *770 directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest. The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and, indeed, such an assumption by it would be contrary to the whole spirit and intent of our government.’” The decisional law to this effect has been created by our judiciary, and perhaps wisely so, in most instances, to avoid intrusion and entanglement into what may indelicately be called a “ political thicket ”. In cirmcumstances such as these, the statement has been made, and is worthy of repetition here, that: “It would not be a wise exercise of judicial powers to interfere with the administrative officials of the city in the performance of their duties, unless the illegal acts complained of result in the waste of public funds or are so flagrant and numerous as to be injurious to the public welfare. But even in such cases it may be well to leave it to the voters of the city to prevent the continuance in office of such officials ’ ’ (Cortellini v. City of Niagara Falls, 257 App. Div. 615, 616-617).
The unfortunate corollary to this dictum, however, is that the grievances of a politically inarticulate and apathetic segment of the electorate may often be left unredressed in the impulse of factious minority passion within the clamor of the political arena (see Madison, The Federalist No. 10).
As traditional guardians of the rights of the People, the courts are not prone to ignore the plight of its wards when no other adequate remedy exists, and have exhibited an increasing tendency in recent times to throw off this self-imposed garb of restraint to come to their assistance. This philosophy has been, perhaps, best expressed by Mr. Justice Bkexxan of the United States Supreme Court, who is quoted as follows: “law is again coming alive as a living process responsive to changing human needs. The shift is to justice and away from fine-spun technicalities and abstract rules * * * This shift of law away from emphasis upon abstract rules to emphasis upon justice has profound significance for judicial decision making. That shift has outmoded many of the traditional mechanical limits on judicial action.” (The Changing Bole of the Supreme Court, by Dean Forester, Cornell Law School, N. Y. S. Bar 39, J. No. 4, Aug., 1967, p. 277.) In the circumstances of the application at bar, petitioners’ right to the relief sought is clear; and this court cannot abrogate its responsibility to them. The People must never be permitted to lose confidence in the ability of the courts to secure redress of their grievances.
*771 Accordingly, the petition is granted to the extent that each and every complaint with respect to violations of statute, ordinance or regulation specifically made therein are remanded to respondents for further effective and appropriate action thereon, by any and all lawfully prescribed means at their disposal, in a manner not inconsistent with both the letter and spirit of this opinion. The rights of all this city’s citizens, majority as well as minority groups therein, must be afforded full recognition and equal protection through equal enforcement of the law.