Sidney H. Asch, J.
Plaintiff, a citizen and taxpayer of the City and State of New York, has brought an action for a judgment directing defendant John V. Lindsay, individually, and as Mayor of the City of New York, to discharge J. Lee Rankin from his position as Corporation Counsel of the City of New York.
The grounds of the action are that defendant Rankin is deliberately violating section 10 of Local Law No. 58 of the City of New York of 1967. That law amended subdivision (a) of section 1100 of the New York City Charter to read as follows: “ Every head of an administration or department or elected officer except councilmen who receives a salary from the city shall give his whole time to his duties and shall not engage in any other occupation, profession or employment.”
Plaintiff contends that defendant Rankin is deliberately violating the quoted statute by maintaining a law office and engaging in the private practice of law.
Plaintiff now moves for an order directing the defendant Mayor, pending the trial of this action, to immediately remove the defendant Corporation Counsel from his office.
Defendants cross-move to dismiss the complaint on the ground that plaintiff lacks the legal capacity to sue and on the further ground that the complaint fails to state a cause of action.
The issues raised by the attack on plaintiff’s standing are only deceptively easy to resolve. It is sometimes overlooked that ‘ ‘ when standing is placed in issue in a case, the question is whether the person whose standing is challenged is "a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.” (Flast v. Cohen, 392 U. S. 83, 99-100).
It is asserted by defendants that in order for plaintiff to bring this action, he is required to be a “ real property taxpayer.” They maintain that as a prerequisite, before a person may challenge the constitutionality or legality of a statute, or the conduct of a public agency or officer, he must show a specific interest which is threatened or banned by the defendant. Mere status of a taxpayer or citizen, as relied on by plaintiff, is not enough.
Superficially, it appears that this ‘ ‘ rule is one which judicially formulated, has been applied by this court for more than 100 years.” (See, dissent of Fuld, J., St. Clair v. Yonkers Race *670 way, 13 N Y 2d 72, 77, and authorities there collected.) However, these precedents, as applied to the instant case, seem neither warranted by authority nor public policy.
Section 51 of the General Municipal Law, upon which both the plaintiffs and defendants seem to rely, contains a statutory prescription for the standing required to bring certain actions. It provides that “ any person * # * whose assessments shall amount to one thousand dollars ’ ’ may maintain an action against a county, town, village or municipal officer ‘1 to prevent any illegal official act,” “or to prevent waste or injury to, or to restore or make good ’ ’ any property of such governmental unit.
The title to section 51 reads: “ Prosecution of officers for illegal acts.” Its dominant purpose apparently was to permit a taxpayer to bring a lawsuit to protect a property or financial interest. Thus, it has not been considered necessary that a person bringing an action under this section be a resident of the municipality if he is a taxpayer. (Steele v. Village of Glen Park, 193 N. Y. 341 ; Olin v. Town of North Hempstead, 194 N. Y. S. 2d 979 ; see, also, Wenk v. City of New York, 171 N. Y. 607 ; Wey v. O’Hara, 48 Misc. 82.) Bare illegality has been deemed insufficient to warrant a taxpayer’s action. It has required, in addition, a claim that the acts complained of have caused or will cause injury to the city and waste of its funds or property. (Bauer v. City of Niagara Falls, 262 App. Div. 938 ; Wilmerding v. LaGuardia, 176 Misc. 449 ; Sweeney v. Farrington, 38 Misc 2d 882 ; Schreiber v. Wagner, 37 Misc 2d 985 ; Simone v. Kennedy, 26 Misc 2d 748.)
What is surprising is that neither plaintiff nor defendant has either alluded to section 36 of the Public Officers Law or compared its provisions to section 51 of the General Municipal Law. It is the former section which actually pertains to the removal of a local officer for “ misconduct,” the relief sought in this action. It is striking that the “ application for such removal may be made by any citizen resident ” (italics added) under this section. The appropriate forum for such relief is ‘ ‘ the appellate division of the supreme court held within judicial department embracing ’ ’ the local unit of government concerned. The provision has been invoked for the removal of a town attorney. (Matter of Sullivan v. Taylor, 279 N. Y. 364.)
Section 36 of the Public Officers Law, by its terms, appears to be limited to a “ town, village, improvement district or fire district officer, except a justice of the peace ”. But a comparison of the language and purposes of section 51 of the General Municipal Law with section 36 of the Public Officers Law throws significant light on the ‘ ‘ standing ’ ’ of plaintiff in the instant *671 action. Under section 36 of the Public Officers Law, an application for the removal of an officer on the basis of alleged misconduct may be made by a citizen resident of the locality. Under section 51 of the General Municipal Law the action directed against the public official must be brought by a person whose assessments amount to one thousand dollars. And consistently, the gravamen of such actions seems to be an injury or threatened injury to some property or financial interest of such plaintiff.
To decide that the “standing” requirements of section 51 of the General Municipal Law bar the plaintiff in this action seems to lead to an incongruous result. It would mean that citizen residents of towns and villages where many people do own assessed property, could apply to remove officials while in a metropolis where most citizen residents are landless taxpayers, they would be barred. Such a distinction seems anachronistic when ownership of land has been abolished as a prerequisite to the exercise of most civic rights. It seems incredible that the denizens of our cities, burdened as they are with municipal sales taxes, income taxes, and the hazards and vicissitudes of urban living, cannot be considered to have a sufficient stake to bring a lawsuit such as the instant one.
The philosophy which bars a citizen taxpayer who cannot show any direct or personal injury from challenging official action has been subjected to critical analysis. Chief Judge Fuld, dissenting in St. Clair v. Yonkers Raceway (13 N Y 2d 72, 78) stated; “ At the present time, virtually every state, either by decision or by statute — New York, by section 51 of the General Municipal Law —permits taxpayers to challenge local action and at least 34 states clearly sanction taxpayers’ suits at the state level, that is, actions by state taxpayers challenging state action; indeed, only two states — New York and New Mexico — squarely prohibit such actions. (See Jaffe, Standing to Secure Judicial Review ; Public Actions, 74 Harv. L. Rev. 1265, 1278 ; Note, Taxpayers’ Suits, 69 Yale L.J. 895, 909-902.) ”
Significantly, in a footnote to the same dissent, Chief Judge Fuld, stated: “It is difficult to reconcile the cited cases with those involving challenged official action with respect to non-fiscal matters. (See, e.g., Matter of Cash v. Bates, 301 N.Y. 258, 261 ; Matter of Kuhn v. Curran, 294 N. Y. 207, 213 ; Matter of Andresen v. Rice, 277 N. Y. 271, 281 ; 3 Davis, Administrative Law Treatise, op. cit., pp. 249-250.) In the Cash case (301 N.Y. 258, supra), for instance, the court held that 1 the erroneous appointment * * * ought to be open to attack by the petitioners, because as citizens and taxpayers they are entitled to an opportunity to insist upon the construction which this *672 court placed upon the civil service article of the State Constitution. ’ ” (p. 261). (Ibid. p. 77, n. 2 ; see, also, the vigorous dissent by Capozzoli and McNally, JJ., in Matter of Perazzo v. Lindsay, 30 A D 2d 179 [1st Dept., 1968]).
Historically, “ standing ” did not require a special interest on the part of the plaintiff and this ancient English rule has persisted to the present day. (Regina v. Thames Magistrates’ Ct., ex parte Greenbaum [1957], 55 Local Govt. Rep. 129, 132, 135-136.)
“ Every citizen has standing to invite the court to prevent some abuse of power, and in doing so he may claim to be regarded not as a meddlesome busybody but as a public benefactor.” (E.g. Lidleston v. Mayor of Exeter [1697], 90 Eng. Rep. 567 ; Rex v. Mayor of Hertford [1700], 91 Eng. Rep. 325 ; Rex v. Inhabitants in Glamorganshire [1702], 91 Eng. Rep. 1287 ; Attorney Gen. v. Bucknall [1741], 26 Eng. Rep. 600 ; 4 Holdsworth, A History of English Law 356 [2d ed., 1937]; Jaffe, Standing to Secure Judicial Review: Private Actions, 75 Harv. L. Rev. 255 [1961] ; 2 Coke, Institutes of the Laws of England 602 [1797] ; Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265 [1961] ; Wade, Anglo-American Administrative Law ; More Reflections, 82 L.Q. Rev. 226, 249 [1966] ; R. Berger, Standing to Sue in Public Actions: Is it a Constitutional Requirement? 78 Yale L. J. 816 [1969]).
Certainly, civic concern cannot be considered the exclusive prerogative of the landed gentry or access to the courts predicated upon feudal livery of seisin. We live in a society where the coercion of technology, the complexity of governmental administration and the anonymity of urban living all conspire to deprive the citizen of an effective voice. The courts are still an agency for protecting the individual and the doors to its relief should not be locked tight. Perhaps the test of “standing” should be whether the complaint raises a significant question of public concern rather than whether it raises an issue personal to the plaintiff. On this analysis, the plaintiff should be deemed to have standing.
The recognition that plaintiff has ‘1 standing ’ ’ in the instant case, does not settle all the issues presented. Defendants have cross-moved to dismiss the complaint for failure to state a cause of action.
The complaint alleges upon information and belief that defendant Corporation Counsel “ engaged ” in the private practice of law. It is not alleged that said practice continues. No details of the practice are furnished, except that the name of such defendant appeared on an office door under the legend 1 ‘ Law *673 Office ” and that in the Manhattan telephone directory there ‘ ‘ still appears ’ ’ after his name the following ‘ ‘ atty 36 W. 44 MU 7-2924.” The complaint also indicates that such defendant admitted that he had devoted “ part time ” to private practice or counseled and advised private clients ‘ ‘ after hours ’ ’.
There is no allegation of present waste or injury or burden upon the municipality. So far as the future is concerned, there is no basis for any apprehension, since it does not appear that the practice complained of continues or that there is reason to believe that it will be resumed.
No facts are alleged which warrant judicial interference in the exercise of the Mayor’s discretion regarding the removal of his appointees. Section 6 of the New York City Charter provides, in part: “ b. The mayor, whenever in his judgment the public interest shall so require, may remove from office any public officer holding office by appointment from a mayor of the city, except officers for whose removal other provision is made by law ”.
The provision is similar to that of section 1103 of the charter, which gives agency heads power to appoint and remove their subordinates subject to provisions of the Civil Service Law. In Matter of Goldberg v. Wagner (9 Misc 2d 663, affd. 5 A D 2d 857, mot. for lv. to app. den. 4 N Y 2d 677, cert. den. 357 U. S. 943), it was sought to compel the Police Commissioner to hold hearings on charges of misconduct brought by a civilian against a patrolman. Special Term held that the matter was one of discretion in the exercise of which the courts would not interfere.
Goldberg was a specific application of the broader rule that the courts do not interfere with the details of municipal administration or law enforcement except as to ministerial matters in regard to which there is no discretion. For a recent authoritative statement and application of the doctrine to a charge of failure to enforce the law, see Matter of Perazzo v. Lindsay (30 A D 2d 179, revg. 55 Misc 2d 767, affd. 23 N Y 2d 764).
Other cases illustrating the refusal of the courts to interfere with law enforcement on the ground that it was a matter within executive discretion are: People v. Ballard (134 N. Y. 269, 293) ; People ex rel. Demarest v. Fairchild (67 N. Y. 334, 337) ; Matter of Lewis v. Lefkowitz (32 Misc 2d 434, affd. 17 A D 2d 778) ; People ex rel. Peabody v. Attorney General, 3 Abb. Pr. 131, 135 ; Matter of Leone v. Fanelli (194 Misc. 826) ; Matter of Hassan v. Magistrates’ Ct., 20 Misc 2d 509, app. dsmd. 10 A D 2d 908, mot. for lv. to app. den. 8 N Y 2d 750, cert. den. 364 U. S. 844).
*674 Section 1100 of the Charter here alleged to have been violated is included within chapter 49, which, in section 1106 deals with conflicts of interest. Significantly, that section distinguishes between discretionary and mandatory consequences of its violation. Thus, subdivision (6) of section 1106 provides that any violation shall constitute cause for removal from office, and subdivision (7) provides for a forfeiture of office upon conviction of a knowing and intentional violation. In contrast, section 1100 mentions not even a discretionary consequence. Forfeitures are provided for in section 1107 (Corrupt practices), and section 1108 (Political contributions). A self-executing provision for vacatur of office is provided by section 1115. To the foregoing provisions of other sections there is also no counterpart in section 1100.
It may be noted that under section 1116 an officer who shall “wilfully” violate any provision of law relating to his office is guilty of a misdemeanor, upon conviction of which he shall forfeit his office. That provision is not here involved.
An even more fundamental policy dictates the decision in this case, the concept of executive responsibility. The trinity of the branches of government is to a large extent predicated on legal mythology. ‘ ‘ In its absolute and rigid formulation, the doctrine of separation of powers has never been a correct reflection of politics.” (Friedmann, Law in a Changing Society 60, 355-358; see, also, Parker, The Historic Basis of Administrative Law: Separation of Powers and Judicial Supremacy, 12 Rutgers L. Rev. [1958], p. 449 et seq.; Miller, The Constitutional Law of the “ Security State ”, 10 Stanford L. Rev., 620, 639 [1954].) Its vitality has not been derived from some vague democratic mystique. It has persisted, rather, because it has been supported by certain pragmatic considerations.
Our founding fathers invoked the doctrine as the corollary of ‘ ‘ checks and balances, ’ ’ a bulwark against despotic government (The Federalist, Nos. 48, 51 ; see, also, the concurring opinions of Justices Frankfurter and Douglas in the “ steel seizure ” cases, Youngstown Co. v. Sawyer, 343 U. S. 579 ; Vanderbilt, Doctrine of Separation of Powers and Its Present-Day Significance [1953] : Wilson, Constitutional Government in the United States [1908] 56-57.) Historically, and perhaps more important, functionally, it has also reflected a primary concept of good management — the allocation of governmental burdens and responsibilities. (4 Holdsworth, A History of English Law [2d ed., 1937] 356 ; Flast v. Cohen, 392 U. S. 83.)
Under the New York City Charter, it is the Mayor who, in the exercise of his executive discretion, selects, appoints and may *675 remove the Corporation Counsel. The Corporation Counsel is an important member of the nucleus of the Mayor’s advisors. It would be an act of judicial usurpation for this court to intervene in the situation. There may be instances in which such action may be appropriate, but the plaintiff in this case has failed to show any valid basis for the entry of a judgment overriding the discretion entrusted with the Mayor by the law.