Xavier C. Riccobono, J.
Motions under calendar numbers 183 and 200 of May 7, 1971 are consolidated herein for the purpose of disposition.
Petitioners, pursuant to article 78 of the CPLR, seek a judgment directing respondent John V. Lindsay, Mayor of the City of New York, to refrain from implementing certain “ staff-cut orders ” announced by the Mayor on April 19, 1971, to be effective May 1, 1971.
The petitioners claim that the Mayor in promulgating the specified orders failed to comply with the requirements of the New York City Charter (City Charter) and thereby violated the due process clauses of the State and Federal Constitutions. *706 Respondent contends that his actions have been in compliance with statutory authority and are required by economic necessity. Specifically, the Mayor asserts that available city revenues have fallen far short of what had been anticipated and are, in fact, insufficient to meet all of the existing 1970-1971 fiscal obligations of the city. In order that expenditures may be brought in line with available revenues, the Mayor claims that certain reductions in programs and personnel are regrettably necessary, including the reductions which are the subject of this proceeding.
An application to intervene in the initial action has been made by certain shelter inspectors of the Department of Public Works, who have been laid off as a result of the Mayor’s orders. The shelter inspectors claim that they will be directly affected by the disposition of the initial action, and the unopposed application is granted.
As an affirmative defense to the application before the court, the respondent alleges that the petitioners lack standing to maintain the instant court proceeding or, in the alternative, only those petitioners who are individually being discharged from city employment have a standing to sue. With regard to those petitioners discharged from city employment, insofar as the specified orders have unquestionably been to their personal detriment, they have such standing. Furthermore, they are entitled to proceed by class action pursuant to CPLR 1005. It should be noted, however, that the rights of the discharged petitioners, under the rules and regulations of the Department of Personnel and the City Civil Service Commission, are not before the court in this proceeding.
The remaining petitioners, not employed by the City of New York, besides asserting their status of citizens and taxpayers of the municipality, claim standing to initiate this proceeding as beneficiaries of municipal services, particularly services jeopardized by the now challenged orders. The petitioners have demonstrated sufficient reliance on the specified services to satisfy the court of their right to proceed herein. Furthermore, as noted in the recent decision in Tuck v. Heckscher (65 Misc 2d 1059, 1060) where a matter of substantial public concern was also at issue, “it cannot be denied that the subject matter of this proceeding is permeated with public interest. Unquestionably, the relief sought by the parties is of abiding concern to all of the people of this city and, as such, there need be no express showing of personal interest or further proof that petitioners, individually, are specifically or specially aggrieved parties.” (See, also, Blaikie v. Lindsay, 66 Misc 2d 668 ; Matter *707 of Procaccino v. Stewart, 60 Misc 2d 551, revd. on other grounds 32 A D 2d 484, affd. 25 N Y 2d 301.)
Petitioners’ attack on the Mayor’s staff-cut orders is predicated upon the contention that pursuant to chapter 6 of the City Charter (§ 124, subd. c) these cuts may only be effectuated by the Board of Estimate and the City Council, after public hearings have been conducted. The Mayor claims authority to effectuate the specified program and personnel reduction by virtue of chapter 6 (§ 123, subds. b and c) of the City Charter, and he further argues that subdivision c of section 124, relied on by the petitioners, is wholly inapplicable.
The controverted sections of the City Charter provide as follows:
Subdivision b of section 123, entitled Budget administration, provides: ‘ ‘ The mayor shall keep informed during the course of each fiscal year, of the progress of expenditures and the receipt of revenues, and it shall be the duty of all agencies when requested by the mayor, to supply all information needed for this purpose.”
Subdivision c thereof: ‘ ‘ The mayor may issue directives imposing limitations on the transfer or expenditure of funds appropriated in the budget, which except as otherwise provided by law shall be binding on all agencies.”
Subdivision c of section 124, entitled Budget modification, provides : ‘1 Upon recommendation of the mayor, the board of estimate and the council may during any fiscal year transfer part or all of any unit of appropriation from one agency to another, or establish a new unit of appropriation within funds lawfully available therefor, or transfer all or part of any unit of appropriation for the purpose of establishing or adding to any new unit of appropriation, or change the terms and conditions of the budget; but in any such case there shall be public hearings in the manner provided in section one hundred nineteen upon ten days’ notice published in the City Record. Written notice of any such transfer or change shall be given to the comptroller within ten days after such transfer or change.”
The above sections of the City Charter indicate that the Mayor acted within the scope of his statutory authority in promulgating the specified program and personnel reductions, and that the petitioners have misconstrued subdivision c of section 124 of the City Charter. The actions taken by the Mayor did not (1) ‘ ‘ transfer part or all of any unit of appropriation from one agency to another ”, or (2) “ establish a new unit of appropriation within funds lawfully available therefor ” or (3) “ transfer *708 all or part of any unit of appropriation ’ ’, or (4) ‘ ‘ change the terms and conditions of the budget.” The Mayor’s actions, therefore, do not fall within the purview of subdivision c of section 124 of the City Charter.
Clearly, the Mayor’s announced reduction in certain programs and personnel constitutes ‘ ‘ limitations on the * * * expenditure of funds appropriated in the budget ”, and these actions are wholly within the authority granted to him by subdivision c of section 123 of the City Charter. Insofar as the Mayor has properly acted pursuant to the noted statutory authority, he has not violated the due process clauses of the State or Federal Constitutions.
The petitioners also assert that the specified reductions in staff and personnel will primarily and most drastically affect the poor, and the discriminatory character of the reductions violate the guarantees of equal protection of the law contained in the State and Federal Constitutions. Without becoming embroiled in the issue of which of the vast number of services rendered by the city should be given priority, to the extent that the poor are most dependent on services rendered by the city, they may be most affected by any substantial reduction of those services. The petitioners, however, have failed to demonstrate that actions taken by the Mayor were in any way unreasonable or calculated to disproportionately deprive particular segments of the city’s population of service.
Accordingly, the stay granted heretofore is vacated and the instant application seeking to restrain the Mayor from implementing the announced program and personnel reductions is denied and the petition is dismissed.